[Crim. No. 11495. First Dist., Div. One. Jan. 9, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ALCEE FOSTER, Defendant and Appellant.

## COUNSEL

Robert J. Kwasneski, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James and Edward P. O'Brien, Assistant Attorneys General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Alcee Foster was charged with selling restricted dangerous drugs in violation of Health and Safety Code section

11912 (now § 11379). A jury thereafter found him guilty of that offense. He appeals from the judgment which was entered on the verdict.

About one and one-half years before the charged offense Foster had possessed restricted dangerous drugs *for sale* in violation of Health and Safety Code section 11911 (now § 11378), a crime of which he was thereafter convicted.

Prior to the instant trial Foster's attorney announced that his client "will testify that in fact it was he who was engaged in a sales transaction to [the] undercover agent of the Oakland Police Department. That he knew that what he was selling was secobarbital, a restricted dangerous drug. That he did in fact intend to sell it. That it was he." The attorney continued: "By so testifying he will foreclose all of those reasons for using similars [prior similar offenses] to prove matters legitimately in evidence. He will foreclose this by testifying and, essentially, removing any contested area here. His defense will be entrapment." Counsel then stated that he relied upon *People* v. *Benford,* 53 Cal.2d 1, 11 [345 P.2d 928].

The trial court ruled that proof of Foster's earlier conviction would be allowed in evidence, and it was later so admitted. Foster made the evidentiary concessions as promised by his attorney, and relied solely on the defense of entrapment.

The trial court, among other things, instructed the jury in this manner:

"Evidence has been received tending to show that the defendant committed a crime other than that for which he is on trial. . . . Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show: . . .

"The existence of the intent which is a necessary element of the crime charged; . . .

"A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case."

Of course, essential to the defense of entrapment is proof that the idea of committing the crime did not originate in the mind of the accused but instead had its origin in the mind of another, and was suggested to the defendant by a law enforcement officer or a person acting under his direction, for the purpose of inducing the accused to commit the crime in order to give cause for his arrest. But, nevertheless, if the defendant himself, independently of the law enforcement officer or agent intended to commit the act constituting the crime he is guilty of the crime committed. It is no

defense that the law enforcement officer or agent was present and provided the opportunity or aided and abetted or encouraged commission of the offense. (See *People* v. *Gregg,* 5 Cal.App.3d 502 [85 Cal.Rptr. 273]; 1 Witkin, Cal. Crimes (1963) §§ 174-176; CALJIC (3d rev. ed. 1970) Nos. 4.60 and 4.61.)

It will be seen that the principal, if not the only, issue before the jury of this case was whether or not Foster, intending to make sales of restricted dangerous drugs, was merely provided the opportunity to make such a sale by the undercover police officer.

The basic rule with which we are concerned is clear and has often been stated.

Evidence Code section 1101 authorizes "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."

Section 1101, effective January 1, 1967, codified the preexisting rule which was stated by *People* v. *Kelley,* 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], in this manner: "The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect [p. 238] . . . . [But it] is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan." (P. 239.)

It is manifest that conclusive proof of Foster's possession, 18 months before, of restricted dangerous drugs *with intent to sell them,* had a logical and substantial tendency to establish an intent, independent of any persuasion of the undercover officer, to sell the drugs here at issue.

On his appeal also, Foster relies on *People* v. *Benford, supra,* 53 Cal.2d 1. That case states (p. 11): "In California . . . evidence that defendant had previously committed similar crimes or had the reputation of being engaged in the commission of such crimes or was suspected by the police of criminal activities is not admissible on the issue of entrapment. (*People* v. *Roberts* (1953) *supra,* 40 Cal.2d 483, 490 [254 P.2d 501]; *People* v. *Makovsky* (1935) *supra,* 3 Cal.2d 366, 370 [44 P.2d 536].)"

As will be seen it is relevant to the question before us to consider the origin and authority of the rule of *People* v. *Benford. People* v. *Roberts,*

relied upon by the *People* v. *Benford* court, did not concern proof of a prior offense. It dealt instead with a charge of prosecutorial misconduct in asking an accused the question, " ' 'You're commonly known in the Fillmore as a peddler of narcotics, are you not?' "; the court found the question "inadvertent," and not prejudicial. (40 Cal.2d at p. 490.) The case is of doubtful authority here. In *People* v. *Makovsky, supra,* 3 Cal.2d at page 370, the court, commenting that "there is no evidence that [Makovsky, who claimed entrapment into the crimes of selling "blackjacks" and "billies"] prior to the sale herein involved had made sale of [such] weapons," said that "Such evidence, if offered, would have been inadmissible, and no doubt would have been objected to . . . ." The pertinent recital was obviously dictum (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 678-679) and the point had clearly not been raised or argued. (See 6 Witkin, *op. cit.,* § 698.) Except for later Court of Appeal cases* relying exclusively on *People* v. *Benford,* we find no authority in accord with the pronouncement of that case.

The fact that in California "the admissibility of other offenses is determined by a seemingly mechanical application of . . . precedent" rather than by individual analysis of each case, had often been criticized. (See 7 U.C.L.A. L.Rev. (1960) p. 464, and see authority there cited.)

In 1969 the state's Supreme Court in *People* v. *Schader,* 71 Cal.2d 761, 771-777 [80 Cal.Rptr. 1, 457 P.2d 841], wrote what must be considered a *restatement* of the discordant principles that had developed in the use of other offenses as evidence in criminal trials. The court rejected the "mechanically automatic rules" which had evolved decisionally, and held that the use of such evidence depended "upon the trial court's consideration of the unique facts and issues of each case." The court (p. 774) adopted and emphasized language of an earlier authority: " 'When [the other offense's] probative value, addressed to the crime charged, is great to prove a vital issue as compared with the lesser likelihood that a jury will be led astray and convict an innocent man because of his bad record, the evidence should be admitted.' . . ."

The *People* v. *Schader* court then (p. 775) laid down the following "guidelines": "Before permitting the jury to hear evidence of other offenses the court must ascertain that the evidence (a) 'tends logically, naturally and by reasonable inference' to prove the issue upon which it is offered; (b) is

---

*\*People* v. *Gossett,* 20 Cal.App.3d 230, 234 [97 Cal.Rptr. 528]; *People* v. *Rodriguez,* 243 Cal.App.2d 522, 525 [52 Cal.Rptr. 643]; *People* v. *Marshall,* 226 Cal. App.2d 243, 245 [37 Cal.Rptr. 887]; *People* v. *Cordray,* 209 Cal.App.2d 425, 436 [26 Cal.Rptr. 42].

offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue. [d] In determining relevance, the trial court must look behind the label describing the kind of similarity or relation between the other offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong. [e] In order to assess materiality, the court must consider not merely the elements of the offense, but also the defendant's testimonial admissions. . . ."

We are obliged to conclude that the *People* v. *Schader* court impliedly disapproved earlier cases such as *People* v. *Benford, supra,* 53 Cal.2d 1, which applied contrary rationale.

We apply the "guidelines" of *People* v. *Schader* to the case at bench.

Foster's prior "possession for sale" conviction (a) tended "logically, naturally, and by reasonable inference" to establish a preexisting intent to commit the crime of which he was charged. (b) It was offered on an issue material, indeed critical, to the People's case. (c) It was not cumulative with respect to other evidence. (d) The "chain of inference" resulting from the first offense was "reasonably strong." (e) And Foster's testimonial admissions pointed up the materiality of the evidence of the earlier offense.

Furthermore, there was scant "likelihood that [Foster's] jury [would] be led astray and convict an innocent man because of his bad record" for here, as in most entrapment cases, the accused had admitted committing the offense of which he was charged.

These several considerations impel us to conclude that the trial court did not abuse its discretion in allowing proof of Foster's prior conviction for possessing restricted dangerous drugs for sale.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.