[Crim. No. 16691. First Dist., Div. Two. Sept. 5, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
LONN EARL PARTLOW, Defendant and Appellant.

## COUNSEL

George A. Sherinian, under appointment by the Court of Appeal, Sherinian & Elders and Mitchell Page for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant, Lonn Earl Partlow, appeals from an order granting probation[1] after a jury found him guilty of second degree burglary (Pen. Code, § 459) and three counts of possession of cocaine, amphetamines, secobarbital and tuinal (Health & Saf. Code, § 11350), and acquitted him of possessing cocaine for sale (Health & Saf. Code, § 11351). He contends that: 1) prior to the trial, he was improperly denied disclosure of the whereabouts of the informer who was a material witness; 2) he was improperly denied discovery of certain evidence that could have been used to impeach the informer; 3) the court erred in allowing the possession of cocaine for sale count to remain in the information after it had been dismissed by the preliminary hearing magistrate; 4) his motion to recuse the prosecutor should have been granted; 5) entrapment was proven as a matter of law; and 6) the court erroneously refused to give his requested instructions on entrapment. For the reasons set forth below, we have concluded that the judgment must be affirmed.

---

[1]The notice of appeal erroneously refers to the order of March 1, 1977, as a judgment.

Reviewing the record in the light most favorable to the judgment, as we must, the following pertinent facts appear. About July 1, 1975, the informer, Robert Sladkey, who was on parole for second degree burglary, happened to meet defendant, whom Sladkey had known for 10 or 12 years. The meeting occurred at Eastside Hardware in Santa Cruz, where defendant was buying supplies for his business. When defendant asked Sladkey if he knew where defendant could buy some stolen guns or automatic weapons, Sladkey replied that he didn't know. The course of their conversation turned to Eastside Hardware's warehouse and the fact that its owner, Edward Giubbini, was going on vacation.

After Sladkey indicated that during the vacation the manager who would be in charge of the warehouse was unfamiliar with its exact inventory, defendant asked about the possibility of robbing the warehouse. When Sladkey indicated that television cameras monitored the warehouse during store hours, defendant asked Sladkey if he could get a set of keys. Sladkey's mother was the assistant manager, took care of the Giubbini household when they were away, and had an extra set of keys at all times. She lived in a house adjacent to the warehouse premises. Sladkey promised to let defendant know when the Giubbinis actually left for their two-week vacation to Alaska so that further plans for the burglary could be made at that time.

Unknown to defendant, Sladkey had been an informer for the State Department of Justice under the supervision of Agent Walter Kubas. Kubas told Sladkey to let Inspector Verbrugge of the district attorney's office know if he heard of any crimes being planned in Santa Cruz. Sladkey promised to keep in touch. Accordingly, on July 3, 1975, Sladkey contacted Verbrugge and told him of the proposed burglary of Eastside Hardware warehouse that defendant had discussed. Sladkey indicated that the burglary was going to take place during the Giubbini's vacation. Verbrugge duly notified Sergeant Kusanovich of the Santa Cruz Police Department.

On July 11, Sladkey met with Verbrugge, Kusanovich and Deputy District Attorney Danner, to tell them that the burglary was going to take place within three weeks. Between July 10-12, Sladkey left a message for defendant, indicating that the Giubbinis had left for their vacation. On July 14, Verbrugge, Kusanovich and Danner met with Giubbini and made arrangements to secure keys to the warehouse; these keys were then given to Sladkey by Kusanovich. During the next few days, Sladkey had several telephone conversations with defendant. After they decided that

the burglary would take place on the night of July 22 between the hours of 8 and 12, Sladkey informed Verbrugge.

On July 22, the police staked out the warehouse while Verbrugge and Danner waited in the house belonging to Sladkey's mother, adjacent to the warehouse. When Sladkey called defendant at home around 8:30, there was no answer; Sladkey left a message with defendant's answering machine. Defendant called Sladkey at the house about 10:30 and again at 10:50; it was decided there would be no burglary that night.

The next night, July 23, the stakeout of the warehouse continued. Verbrugge and Danner again waited in the house while Kusanovich watched the warehouse and kept the others posted. After another exchange of telephone calls between Sladkey and defendant, defendant told Sladkey he was on his way. When defendant arrived, he parked his truck in the driveway of the house, took the keys from Sladkey and opened the warehouse doors. Defendant had a pocket scanner which monitored police frequencies and enabled him to hear incoming calls to patrolling units. After he and Sladkey finished taking what they wanted out of the warehouse, defendant got into his truck and proceeded to drive away. He was stopped by Kusanovich.

After defendant was arrested, he was taken to the station where he was searched by Officer Bartle. Bartle found on defendant's person two plastic vials and a plastic bag containing valium, secobarbital, tuinal, methqualone and methamphetamine and a paper bindle containing .17 grams of cocaine. Bartle also found a small black book, and concluded that it contained a record of numerous narcotic transactions.

Defendant took the stand and denied any participation in the planning of the burglary or having the bindle of cocaine. He testified that he tried to dissuade Sladkey from any burglary and that Sladkey alone was responsible for the burglary. Defendant was reluctantly persuaded by Sladkey to be there with the truck on the evening of July 23. Sladkey opened the door with his keys and both entered the warehouse. Sladkey took some boxes and items which were loaded on a wheelbarrow and then taken to defendant's truck. Defendant figured that Sladkey could account for the items taken as it was his uncle's warehouse. Some of the narcotics found on defendant also belonged to Sladkey and were given to him by Sladkey on that evening. The book in his possession was a double ledger he kept for a friend who dealt in narcotics. Defendant denied using or selling narcotics.

On October 3, 1975, at the hearing on defendant's motion for pretrial discovery, defendant was granted discovery of certain information concerning Sladkey but was denied any information as to his whereabouts. It was stipulated that Sladkey was a material witness. Danner offered to arrange a meeting at his office between the defense and Sladkey; subsequently, this offer was rescinded. Sladkey refused to make himself available to the defense. Accordingly, defense counsel renewed his request for information concerning Sladkey's whereabouts prior to the preliminary hearing. This motion was denied along with a defense motion to have Sladkey present at the preliminary hearing. Subsequently, defendant's Penal Code section 995 motion for dismissal of the charges for failure to reveal Sladkey's whereabouts was denied.

The defense again raised the matter at preliminary hearing which began on January 7, 1976. The magistrate denied the motion to produce the informer on the basis of the prior denial. At the conclusion of the preliminary hearing, defendant was held to answer on charges of burglary and possession of cocaine; the third count alleging possession of cocaine for sale was dismissed as the magistrate did not believe the amount of cocaine found on defendant was sufficient for that charge.

On January 27, 1976, defendant was charged by information with burglary, possession of cocaine, amphetamines, secobarbital and tuinal, and possession of cocaine for sale. Defendant moved to set aside the information due to the nondisclosure of Sladkey's whereabouts and the filing of the charge alleging possession of cocaine for sale, which had been dismissed by the magistrate at the preliminary hearing. The motion was denied.

Verbrugge testified at the preliminary hearing that there were no charges outstanding against Sladkey. Sometime after the preliminary hearing and before the trial, defendant discovered that Sladkey had been cited for petty theft on July 14, nine days before the burglary. Sladkey was to appear on this charge on July 23 but failed to do so and a bench warrant was issued. On July 29, six days after the burglary, the petty theft matter against Sladkey was dismissed on the People's motion.

At the beginning of the trial, another defense motion to dismiss for failure to disclose Sladkey's whereabouts was denied. A motion to recuse the prosecutor was denied and a final motion to dismiss on the basis of nondisclosure of evidence beneficial to defendant was also denied.

■ Defendant first argues that he was improperly denied disclosure of the whereabouts of Sladkey prior to the trial. As indicated above, although defendant vigorously objected at every stage of the proceeding, the information was not disclosed and Sladkey was not produced until the trial. The question is whether defendant had a right to Sladkey's presence or in the alternative, information as to his whereabouts at the preliminary hearing.

■ Disclosure of the identity of an informant at the preliminary hearing may be required (*People* v. *Goliday,* 8 Cal.3d 771, 778-779 [106 Cal.Rptr. 113, 505 P.2d 537]). Disclosing the identity of an informant includes demonstrating a good faith effort to locate him and providing all pertinent information which might assist the defense in locating him (*Eleazer* v. *Superior Court,* 1 Cal.3d 847, 849, 851 [83 Cal.Rptr. 586, 464 P.2d 42]).

■ "The reasons that require disclosure at the trial also require disclosure at the preliminary hearing, for the defendant has the right at such hearing to cross-examine the prosecution's witnesses (Pen. Code, § 865) and to produce witnesses in his own behalf (Pen. Code, §§ 864, 866). The exercise of these rights at the preliminary hearing may enable the defendant to show that there is no reasonable cause to commit him for trial and thus to avoid the degradation and expense of a criminal trial." (*Mitchell* v. *Superior Court,* 50 Cal.2d 827, 829 [330 P.2d 48], cited with approval in *Theodor* v. *Superior Court,* 8 Cal.3d 77, 90 [104 Cal.Rptr. 226, 501 P.2d 234]). In order for the defendant to be able to exercise his right of disclosure, he must show the informant is a material witness (*People* v. *Garcia,* 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366]). ■ Here, Sladkey's materiality as a witness was stipulated by both parties.

The People here, however, set forth two arguments against the application of the disclosure requirement. First, they assert that Sladkey's whereabouts were kept secret for reasons of safety. Where an individual's right to a fair trial is at stake, the government's privilege to withhold the identity of an informer must give way (*People* v. *Williams,* 51 Cal.2d 355, 357-358 [333 P.2d 19]).

Second, the People claim that defendant can only expect the identity of an informer at the preliminary hearing when the informer's testimony goes to the question of the defendant's guilt. Relying on *People* v. *Uhlemann,* 9 Cal.3d 662 [108 Cal.Rptr. 657, 511 P.2d 609], they argue that

the sole function of the magistrate at the preliminary hearing is to determine whether there is probable cause to bind an individual over for trial and any finding as to the validity of an affirmative defense would be beyond the power of the preliminary hearing magistrate. They argue that since here defendant's purpose for requesting Sladkey's presence at the preliminary hearing was to establish the affirmative defense of entrapment, the informer did not have to be produced until the trial.

The People's reliance on *Uhlemann, supra,* is misplaced. *Uhlemann* does not hold that a magistrate is precluded from finding an individual has been entrapped. Defendant correctly points out that Uhlemann deals only with the subsequent treatment of a case where the magistrate dismisses the action on a finding of entrapment. Our Supreme Court held that such a dismissal would not preclude the People from refiling the same charges before another magistrate or seeking an indictment.

■  As the purpose of the preliminary hearing is to weed out unsupported charges or unjustifiable prosecutions (*Mitchell* v. *Superior Court, supra,* 50 Cal.2d, p. 829), it has been held "To effectuate this constitutional and statutory purpose the defendant must be permitted, if he chooses, to elicit testimony or introduce evidence tending to overcome the prosecution's case or establish an affirmative defense" (*Jennings* v. *Superior Court,* 66 Cal.2d 867, 880 [59 Cal.Rptr. 440, 428 P.2d 304]).  ■  The People concede that pursuant to *Theodor* v. *Superior Court, supra,* 8 Cal.3d, page 90,[2] a defendant has a right to have the informant present at the preliminary hearing for the purpose of establishing the defense of entrapment.  ■  The People, however, contend that even if defendant here was entitled to the presence of the informant at the preliminary hearing, the refusal was not prejudicial, considering the fact that Sladkey, the informant, was produced as a witness at the trial,[3] was subjected to extensive direct and cross-examination by

[2]The record indicates that on several occasions during the proceedings on defendant's motion, the court was prepared to follow *Theodor, supra,* 8 Cal.3d 77, but was dissuaded by the prosecution's misinterpretation of *Uhlemann, supra,* 9 Cal.3d 662.

[3]We agree with the criticism of the present procedures that provide a defendant with two appellate avenues for challenging probable cause, Penal Code section 999a, and again on appeal from the judgment of conviction (*People* v. *Malich,* 15 Cal.App.3d 253, 264-265 [93 Cal.Rptr. 87]). In suggesting that Penal Code section 999a ought to be the exclusive road to appellate scrutiny of the probable cause issue, Justice Friedman noted at page 265: "From a policy standpoint the present rule ignores the expense and delay of an errorless trial of guilt which can be jeopardized by post-trial review of the commitment proceedings antedating the trial. (Cf. *People* v. *Harris* (1967) 67 Cal.2d 866, 870 [64 Cal.Rptr. 313, 434 P.2d 609].) It supplies an adroit defense attorney with the option of attacking the probable cause issue by a pretrial proceeding under section 999a or of reviving it after its hibernation throughout the trial. It obstructs and delays the simplest,

respective counsel, and defendant's guilt was determined by taking into account Sladkey's testimony which shed light on all relevant circumstances of the crimes charged and defendant's participation therein. We agree.

■■■ Defendant relies on *People* v. *Elliot,* 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225], which advances the broad proposition that if the defendant has not been legally committed and the trial court nonetheless erroneously denies the motion to set aside the commitment and permits the action to proceed to judgment, the resulting conviction must be reversed. We note that the cases both preceding and following Elliot indicate that not all errors affecting the legality of the commitment are prejudicial per se. Thus, in *Mitchell* v. *Superior Court, supra,* 50 Cal.2d 827, a narcotics possession and sale case, the magistrate had refused to require the disclosure of the identities of informers who, akin to the case at bench, were material witnesses. The superior court had denied defendants' motions to set aside the information, and defendants sought a writ of prohibition to prevent the trial. While acknowledging that at the preliminary hearing a criminal defendant is entitled to cross-examine an informer who is a material witness on the issue of guilt, the Supreme Court held that the error committed by the magistrate was not prejudicial, and denied the writ by stating, "*Since there was competent evidence to justify committing defendants and disclosure of the names of the informers can be obtained at the trial, defendants were not prejudiced by the error* or deprived of any substantial right." (P. 830; italics added.)

The proposition that the refusal to disclose the identity or availability of the informer or the failure to make him available at the preliminary hearing need not invariably result in the reversal, the ensuing judgment of conviction, even if the informer is a material witness, finds further support in *Jennings* v. *Superior Court, supra,* 66 Cal.2d 867, decided seven years after *Elliot.* While holding that the defendant was prejudicially affected by the failure of securing the attendance at the preliminary hearing of an informer whose testimony might have established the affirmative defense of entrapment, and as a consequence the issuance of the writ was warranted, the Supreme Court saw fit to point out that "*when a defendant fails to challenge, by motion to dismiss and writ of prohibition,*

cheapest and quickest method of remedying a defective proceeding—return to the magistrate's court or the grand jury for a new proceeding under the guidelines developed in the course of pretrial attack. Courts are charged with consuming inordinate time in criminal prosecutions. (See Burger, W.E., *State of the Judiciary* (1970) 56 A.B.A.J. 929.) The rule permitting post-trial review of the probable cause issue adds substance to that charge."

*errors of the magistrate in ruling on the admissibility of evidence* (as distinguished from such fundamental deprivations as denial of counsel or of an unbiased jury), *he will ordinarily receive a fair trial if correct rulings are thereafter made at the trial on the merits; in that event, on an appeal from a judgment of conviction the errors may be found to have been cured in the subsequent proceedings* (see, e.g., *People* v. *Neal* (1942) 53 Cal.App.2d 379, 383 [127 P.2d 996])." (*Jennings, supra,* 66 Cal.2d at pp. 880-881; italics added.)

*People* v. *Neal, supra,* to which *Jennings* refers, furnishes another example that even errors of the most serious nature committed in the course of the preliminary hearing may be remedied in the ensuing proceedings (notably at the trial) and do not necessarily lead to the reversal of the conviction. In *Neal,* the defendant offered testimonial evidence at the preliminary hearing to show that his confession was not voluntary but, rather, was obtained by coercion. The magistrate denied the request of the defense and found that the testimony of the police officer alone provided sufficient proof for probable cause necessary to sustain the commitment. At the ensuing trial, the court, sitting without a jury, heard the testimony of defense witnesses who stated under oath that the defendant's confession was the result of a beating by the police. After the introduction of the prosecution evidence, the trial court resolved the conflict in favor of the People and found the defendant guilty of the crime charged. On appeal, the reviewing court wholeheartedly agreed with the trial court that the magistrate had committed a grievous error by refusing to admit evidence on the voluntariness of the confession. Nevertheless, after reviewing the whole record, the Court of Appeal affirmed the judgment of conviction by underscoring that "before the trial court found appellant guilty it permitted him to introduce all the evidence he had available concerning the means by which his confession was obtained, *thus effectively curing the error committed by the magistrate's ruling at the preliminary hearing.*" (*People* v. *Neal, supra,* 53 Cal.App.2d at p. 383; italics added.)

▇▇▇ Our conclusion that the prejudicial effect of failing to disclose Sladkey's whereabouts at the preliminary hearing was fully cured by his ensuing trial testimony is supported not only by the cited cases, but also by the "*ratio decidendi*" of the cases and the legal policy underlying the disclosure of the informer at such hearing. As indicated above, the purpose of the preliminary hearing is to weed out groundless and unsupported charges and to relieve the accused of the degradation and expense of an *unfounded* criminal trial (*Theodor* v. *Superior Court, supra,*

8 Cal.3d, p. 90). ■ As the court observed in *Mitchell* v. *Superior Court, supra,* 50 Cal.2d at pages 829-830, there are two legitimate reasons for disclosure at the preliminary examination: (1) to show there is no reasonable cause to commit and thus avoid a trial, and (2) to prepare for trial (see also *People* v. *Flemmings,* 34 Cal.App.3d 63, 68 [109 Cal.Rptr. 661]). ■ Finally, the cases also underscore that the right to disclosure arises "when defendant demonstrates a *reasonable possibility that the anonymous informant* whose identity is sought *could give evidence* on the issue of guilt *which* might result in defendant's exoneration" (*People* v. *Garcia, supra,* 67 Cal.2d at p. 840; italics added; accord *People* v. *Flemmings, supra,* 34 Cal.App.3d 63).

■ When viewed in light of the stated principles, the instant case conclusively shows that there was sufficient evidence to support the commitment and thus the trial of defendant could not have been avoided even if Sladkey's testimony had been introduced at the preliminary hearing. Moreover, the record as a whole (especially the lengthy and thorough cross-examination of Sladkey) demonstrates that defendant had abundant information regarding the informant Sladkey, whose name and activities were well known to defendant.[4] As a consequence, defendant cannot be said to have been hampered or impeded in his trial preparation. Finally, and most importantly, the evidence adduced at the trial (including Sladkey's testimony) proved to be sufficient not only to sustain mere probable cause, but also defendant's guilt beyond a reasonable doubt and to a moral certainty. In view of this record and the jury verdict based thereon, which should be interpreted as an implied rejection of the defense of entrapment, it cannot be claimed that Sladkey's testimony at the preliminary hearing would have, or might have, resulted in defendant's exoneration on any conceivable ground or theory. Thus, the error was harmless beyond a reasonable doubt (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065]).

■ Accordingly, we hold that *Elliot, supra,* 54 Cal.2d 498, requiring automatic reversal, is not applicable to the instant case. In *Elliot,* the statutory violation, which rendered the commitment illegal within the

[4]This fact, as well as the absence of a subsequent trial, distinguishes the instant case from *People* v. *Iocca,* 37 Cal.App.3d 73 [112 Cal.Rptr. 102]. In *Iocca,* the superior court overruled a magistrate's denial of defendant's motion for a continuance of the preliminary hearing to locate an informant for the purpose of substantiating an entrapment defense. We affirmed the superior court order and held that the magistrate's denial of the continuance would have served to deprive the defendant of a reasonable opportunity to prepare his defense (*Iocca,* pp. 79-80).

meaning of section 995 of the Penal Code, was the presence of an unauthorized person (a newspaper reporter) in the courtroom in circumvention of section 868 of the Penal Code, a mandatory statute. It is self-evident that the violation found in *Elliot* was not curable, no matter how faultless or impeccable the ensuing trial might have been. Under those circumstances, the holding of the court that the observance of defendant's rights at the trial could not remedy the statutory violation committed at the preliminary hearing was entirely justified.[5]  ▮  By contrast, in the instant case, defendant's claim that he was prejudiced by the lack of availability of the informant at the preliminary hearing, could be, and in effect was, cured at the trial where the informant was put on the witness stand and subjected to exhaustive and lengthy cross-examination by defense counsel.

▮ Defendant's argument, predicated on *Elliot, supra,* 54 Cal.2d 498, that the reversal of conviction is mandated because upon proper objection of the defendant, the jurisdiction of the superior court terminates and renders the subsequent proceeding null and void (*People v. Elliot, supra,* 54 Cal.2d at p. 503), is further negated by subsequent case law. (*People* v. *Callaghan,* 63 Cal.App.3d 897, 901 [134 Cal.Rptr. 134], hg. den.; *People* v. *Meals,* 49 Cal.App.3d 702, 706 [122 Cal.Rptr. 585]; *People* v. *Gibbs,* 16 Cal.App.3d 758, 765 [94 Cal.Rptr. 458], hg. den.; *People* v. *Warburton,* 7 Cal.App.3d 815, 821 [86 Cal.Rptr. 894], hg. den.). All hold that insufficiency of evidence before the grand jury or at the preliminary examination is jurisdictional in the special procedural sense that the ruling of the trial court may be reviewed by writ of prohibition under section 999a of the Penal Code, but the defect is not jurisdictional in the fundamental sense because it is subject to waiver.

We turn next to defendant's remaining contentions on appeal.

[5]Other examples where the courts found that the error committed by the magistrate at the preliminary hearing was not (and could not be) cured at the trial are: when the defendant was denied the right to assistance of counsel at the preliminary hearing (*McCarthy* v. *Superior Court,* 162 Cal.App.2d 755, 758-759 [328 P.2d 819]); when the defendant was not advised by the magistrate, as required by section 859 of the Penal Code, of his right to counsel (*People* v. *Miller,* 123 Cal.App. 499, 501-502 [11 P.2d 884]); when the magistrate listened to the argument of the prosecution and ruled on the motion to dismiss the information without notifying the defendant's counsel (*People* v. *Hellum,* 205 Cal.App.2d 150, 153-154 [22 Cal.Rptr. 724]); when the magistrate denied the defendant a reasonable continuance to permit him to send for counsel as required by section 860 of the Penal Code (*People* v. *Phillips,* 229 Cal.App.2d 496, 501-502 [40 Cal.Rptr. 403]).

■ Defendant next urges that as a result of his belated discovery of Sladkey's petty theft charge, it became impossible for him to conduct the necessary investigation to determine if the charge had been dismissed as consideration for Sladkey's work as an informer. There is no question the prosecution had a duty to disclose the evidence concerning Sladkey's citation as it was favorable to defendant (*In re Ferguson,* 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234]). ■ Even if there was no wilfullness, the negligent failure by the prosecution to disclose relevant evidence can result in a denial of a fair trial (*In re Imbler,* 60 Cal.2d 554, 567 [35 Cal.Rptr. 293, 387 P.2d 6], cert. den. 379 U.S. 908 [13 L.Ed.2d 181, 85 S.Ct. 196]). Evidence reflecting on the credibility of the prosecution's key witness is relevant and substantial (*People* v. *Ruthford,* 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341]), and its suppression would merit reversal unless the error was "harmless beyond a reasonable doubt" (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 711]).

■ Defendant relies on *In re Ferguson, supra,* 5 Cal.3d 525, and *People* v. *Johnson,* 38 Cal.App.3d 228 [113 Cal.Rptr. 303]; in each, there was a total suppression of material evidence. Here, defendant discovered the petty theft charge and was able to point out to the jury that it had been dismissed on the People's motion. The record provides no reason to believe that if defendant had been informed earlier, he would have been able to prove Sladkey's dismissal was consideration for his testimony. The uncontradicted testimony indicates that Sladkey's petty theft citation occurred after he had supplied the information about the pending burglary of the warehouse contemplated by defendant. Thus, there could be no inference that Sladkey had a motive to lie as a result of the petty theft citation. We conclude the error was harmless beyond a reasonable doubt and would not in itself have warranted a reversal.

■ Next, we turn to the question of whether the trial court erred in allowing the charge of possession of cocaine for sale to remain in the information after it had been dismissed by the magistrate at the preliminary hearing. In *Jones* v. *Superior Court,* 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], the defendants were charged with forcible rape, oral copulation and sodomy. While the defendants admitted sexual intercourse, they denied the use of force and the occurrence of oral copulation and sodomy. At the preliminary hearing, the magistrate held defendants to answer for statutory rape, as the prosecutrix was only 17, but stated he did not believe the events alleged took place and dismissed the other charges. The Supreme Court held the magistrate had made

material factual findings disbelieving the testimony of the prosecutrix which precluded any subsequent refiling of those charges.

Here, the magistrate stated the amount of cocaine was insufficient to create the strong suspicion that it was being held for sale, due to the limited quantity. Thus, the magistrate accepted the evidence but reached an ultimate legal conclusion. A magistrate's conclusion of insufficient reasonable cause is open to challenge by inclusion in the information (*People* v. *Farley,* 19 Cal.App.3d 215, 222 [96 Cal.Rptr. 478]; accord *Dudley* v. *Superior Court,* 36 Cal.App.3d 977, 983-985 [111 Cal.Rptr. 797]). As the sale of cocaine charge in the information here was within the context of the magistrate's findings on the evidence, it was properly charged in the information (*Jones* v. *Superior Court, supra,* 4 Cal.3d, at pp. 665-666; *People* v. *Lipinski,* 65 Cal.App.3d 566, 573 [135 Cal.Rptr. 451]). In any event, defendant was not prejudiced thereby as he was acquitted of that count.

Defendant's claim that the trial court should have granted his motion to recuse the prosecutor on grounds of bias is likewise without merit. Defendant relies on *People* v. *Superior Court (Greer),* 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164], where there was gross conflict of interest since a clerical employee of the district attorney, who prosecuted the case, was the mother of the homicide victim and a material witness for the prosecution. One of the defendants was her daughter-in-law and proof of the child custody dispute between the deceased and the defendant was a part of the prosecution's case. In addition, the grandmother potentially could have gained custody of the defendant's child.

Defendant's claim of bias here is predicated primarily on Danner's involvement in the setup of the burglary, presence at the time of the commission of the offense, and involvement in the charging process as he signed the information. He also asserts that Danner's personal knowledge of the facts of the burglary provided an unusual advantage in the examination of certain witnesses. The facts of the instant case do not reveal such an intense personal involvement of the district attorney, as was the case in *Greer, supra,* or the authorities cited in *Greer.* We conclude there was no abuse of discretion here (*People* v. *Battin,* 77 Cal.App.3d 635, 671 [143 Cal.Rptr. 731]).

Defendant next argues that entrapment was established as a matter of law and his motion to acquit should have been granted. The

question is whether there was substantial evidence to show that the intent to burglarize the warehouse originated in the mind of defendant. ⬛ If the original intent was manifested in the mind of defendant, it is no defense that the police were present or provided the opportunity or even encouraged the commission of the offense (*People* v. *Foster,* 36 Cal.App.3d 594, 596-597 [111 Cal.Rptr. 666]). "Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused" (*People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19]; see also *People* v. *Moran,* 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]).

⬛ Here, there was a conflict of evidence on the issue of entrapment and the duty of resolving that conflict was exclusively within the jury's province (*People* v. *Blackwell,* 45 Cal.App.3d 804, 809 [119 Cal.Rptr. 768]). The jury believed Sladkey, whose testimony provided substantial evidence for the finding of no entrapment (*People* v. *Gordon,* 47 Cal.App.3d 465, 477 [120 Cal.Rptr. 840]).

⬛ Finally, defendant argues that the court erred in refusing his three proffered instructions on entrapment. While defendant's first two proposed instructions, set forth below,[6] were accurate statements of the law, the proper test for judging the adequacy of instructions is to decide whether the jury was fully and fairly instructed on the applicable law (*People* v. *Jenkins,* 34 Cal.App.3d 893, 899 [110 Cal.Rptr. 465]). There is no requirement that the jury be instructed in the precise language requested by a party (*People* v. *Clark,* 116 Cal.App.2d 219, 224 [253 P.2d 510]).

⬛ Defendant's third proposed instruction read as follows: "If you find that the activities of law enforcement officials or the methods of their agents violated good morals and sound public policy, then the defendant is entitled to an acquittal." This is not an accurate statement of the law. The instruction would have misled the jury as to the proper standard for finding entrapment; therefore, it was properly refused (*People* v. *Rice,* 59

---

[6]"Even a hair trigger susceptibility to an agent's suggestion does not negate entrapment as a matter of law."

"You are instructed that when criminal design does not originate with the defendant, but was suggested to the defendant by a person acting under the control of a law enforcement officer for the purpose of inducing defendant to commit the crime in order to entrap him, social policy bars prosecution of the defendant and he must be acquitted."

Cal.App.3d 998, 1004 [131 Cal.Rptr. 330]; *People* v. *Van Alstyne,* 46 Cal.App.3d 900 [121 Cal.Rptr. 363]).[7]

After reading all of the instructions given by the trial court, we conclude they adequately covered the applicable law and did not mislead the jury in any way.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied October 5, 1978, and appellant's petition for a hearing by the Supreme Court was denied November 9, 1978.

---

[7]In *Van Alstyne,* the court stated at page 907: ". . . California recognizes two independent rationales for the defense of entrapment—(a) to avoid punishment of individuals who had no predisposition to commit a crime but who were induced by law enforcement agents to do so; and (b) to control illegal police conduct out of regard for the courts' own dignity (see *People* v. *Moran,* 1 Cal.3d 755, 760-761 [83 Cal.Rptr. 411, 463 P.2d 763]; *Patty* v. *Board of Medical Examiners,* 9 Cal.3d 356, 368 [107 Cal.Rptr. 473, 508 P.2d 1121]) . . . ."