Filed 6/27/22 P. v. Randall CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES LEE RANDALL,<br><br>    Defendant and Appellant. | F080614<br><br>(Super. Ct. No. F19905858)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Robert Gezi and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Poochigian, Acting P. J., Smith, J. and Snauffer, J.

In this appeal, defendant James Lee Randall challenges the use of expert testimony explaining intimate partner battering syndrome and the cycle of violence in his trial. Defendant believes the use of this testimony violated his constitutional right to due process because it lowered the prosecution's burden of proof on the question of whether he committed domestic violence. Defendant also contends the trial court erred when it failed to provide a jury instruction, sua sponte, limiting the use of this testimony. Our review of the record leads us to conclude there was no error in how this testimony was presented, and further, no prejudicial error in how the jury was instructed. Due to recent legislative changes pursuant to Senate Bill No. 567 (2021–2022 Reg. Sess.; Senate Bill 567), Assembly Bill No. 124 (2021–2022 Reg. Sess.; Assembly Bill 124), Senate Bill No. 81 (2021–2022 Reg. Sess.; Senate Bill 81), and Assembly Bill No. 1869 (2019–2020 Reg. Sess.; Assembly Bill 1869), defendant's sentence is vacated and the matter is remanded for resentencing.

## PROCEDURAL SUMMARY

On December 2, 2019, a second amended information charged defendant with committing corporal injury on a current or former spouse, cohabitant, or fiancée (Pen. Code, § 273.5, subd. (f)(1);[1] count 1), and that he had suffered a conviction of section 273.5, subdivision (a), within seven years of this new charge. The information further alleged that in committing the crime alleged in count 1, defendant inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). Defendant was also charged with contempt of court, a misdemeanor (§ 166, subd. (c)(1); count 2). Finally, two special allegations were included alleging defendant suffered a prior conviction that qualified as a "strike" (§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which made him ineligible to be sentenced to county jail (§ 1170, subds. (f) & (h)), and a prior serious felony conviction (§ 667, subd. (a)(1)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2.

On December 6, 2019, the jury found defendant guilty of inflicting corporal injury as alleged in count 1, and contempt of court. The jury also found defendant personally inflicted great bodily injury in committing the corporal injury, and that defendant had a prior misdemeanor conviction for domestic violence. Thereafter, defendant admitted he suffered a prior conviction for a strike offense and a prior serious felony conviction.

On January 7, 2020, after denying defendant's motion made pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the court sentenced defendant to a term of 18 years in prison. That term consisted of the upper term of five years for inflicting a corporal injury, doubled to 10 years because of the prior strike, plus five years pursuant to section 667, subdivision (a)(1), plus three years for having personally inflicted great bodily injury. The jail sentence for the misdemeanor offense was ordered to be concurrent to the prison term.

## FACTUAL SUMMARY

This factual summary will focus on those facts necessary to resolve the issues defendant raises in this appeal. On August 3, 2019, a neighbor of defendant's called 911 to report she heard people shouting in a nearby apartment. Responding to that phone call, Officer Meng Xiong encountered K.H. At trial, Xiong testified K.H. appeared distraught, and that her left eye was swollen shut, she had dried blood on her nose and there was a large handprint on her right cheek. In a video recording of the conversation at the scene, K.H. told Xiong that she and her boyfriend, who she identified as defendant, had argued. K.H. stated to Xiong there "was a lot of yelling going on and I ended up on the floor." K.H. told Xiong that defendant may have punched her in the face as well as tackled her during the argument.

Officer Jose Ruiz also responded to the 911 call, and also recorded his conversation with K.H. Without identifying defendant, K.H. told Ruiz "[h]e try to knock my eye out for no reason."

3.

At trial, K.H. testified defendant had been her boyfriend for three and a half years. K.H. still considered defendant her boyfriend and was not happy about testifying in court against him. K.H. testified she "[k]ind of" remembered talking to police on the date of the incident, but did not remember what she told them. K.H. remembered defendant hitting her, but it "was, like, a slap," and did not know how her eye was injured. K.H. said defendant slapped her during an argument about her phone, but stated he did not slap her near her eye. She did not remember telling police defendant tackled her. K.H. admitted during her testimony that she and defendant drank a considerable amount of alcohol the night of the incident.

Additional testimony from K.H. addressed an incident that occurred approximately three weeks later. On August 28, 2019, K.H. was driving with defendant when she was stopped by the police. When asked who was with her in the car, K.H. indicated she did not know defendant very well and did not know his real name. The officer who made the traffic stop testified defendant admitted he provided a false name and birthdate when he asked him to identify himself. Defendant admitted he did this because there was a warrant out for his arrest. Defendant also acknowledged to the officer there was a protective order in place regarding K.H.

Finally, when asked, K.H. could not remember if defendant had been convicted of a misdemeanor for domestic violence against her. An officer who encountered K.H. during that prior incident of domestic violence in March 2017, identified defendant as the suspect in that case.

Stacy Gomez offered testimony as an expert on domestic abuse. Gomez described her 17 years of experience working for various agencies helping victims of domestic violence, and her education in social work. Gomez was then asked to address the dynamics of intimate partner battering syndrome. Gomez explained the dynamics of domestic violence involve a "cycle of violence," that results in partners leaving then coming back together numerous times, ultimately resulting in a learned helplessness by

4.

the victim of the abuse. This cycle includes a honeymoon phase, followed by a tension-building phase, where everything is questioned and control is asserted, ending with an explosive stage where violence occurs.

Gomez noted that even healthy relationships might go through a tension-building phase, but through communication, the tension in these relationships gets resolved. In an abusive relationship, the tension-building phase moves on to a more explosive stage because the victim might not have the ability to communicate and the abuser wants control. It is not uncommon for the relationship to reenter the honeymoon phase when the abuser is apologetic and the victim wants to give the abuser another chance. After going through several cycles of this behavior, Gomez explained that a victim might lie about the abuse so the partner does not get into trouble or face a conviction for the abuse. This often results in a victim saying they do not remember details about the event, or blame themselves for what happened.

### *The Defense*

Defendant discussed how he met K.H. and how long they had been together. While they lived together for a time, they lived apart at the time of the events involved in this case. Defendant described how K.H. would often drink alcohol until she passed out. When he would confront her about this while she was drinking, they would get in a fight. If he addressed the topic when she was sober, she often did not remember what had happened. Defendant testified he observed K.H. get into fights with her own children when she was drinking. Defendant admitted he and K.H. got into fights, but at most he would push her away. He testified that he never "all out hit her." In fact, K.H. would tell him to leave when she was drinking to avoid things escalating.

Defendant testified on the evening of August 2, 2019, K.H. was already upset with him and had already been drinking when she first showed up at his apartment. He was eventually able to calm her down, suggesting they watch a movie. They eventually went to a store to buy more alcohol. After they returned to the apartment, defendant and K.H.

5.

argued about who was "cheating." Defendant admitted he scratched K.H.'s face in the resulting scuffle. When defendant tried to leave, taking a box of beer with him to prevent K.H. from drinking more, he got into a shoving match with K.H., ending with him pushing K.H. who fell to the ground. Defendant insisted he did not hit, punch, slap, or kick K.H., and he does not know how she received a black eye.

## DISCUSSION

Again, defendant's challenges in this appeal are limited to the testimony offered by Gomez on intimate partner battering syndrome and the cycle of violence.

## I.     Defendant's State and Federal Due Process Rights Were Not Violated by the Testimony on Intimate Partner Battering Syndrome

### A.     Defendant Forfeited His Objection to this Testimony by Failing to Object

Defendant believes the admission of the intimate partner battering syndrome evidence violated his right to due process because it reduced the prosecution's burden to prove guilt beyond a reasonable doubt. Defendant argues that because this is an issue of constitutional law, the objection cannot be waived, and this court should exercise its discretion to consider the constitutional claim. A review of the record demonstrates defendant has overstated the impact of the expert testimony offered here.

At no time during Gomez's testimony did defense counsel object to any of the information presented. In fact, during cross-examination, defense counsel made a point of highlighting the fact Gomez did not know K.H. and did not watch any of the testimony offered by her or others in the case. Gomez's testimony never addressed the specific facts of this case, focusing instead on explaining concepts surrounding intimate partner battering syndrome and the typical behaviors adopted by individuals involved in that dynamic.

Defense counsel failed to raise any due process concerns below. The rule of forfeiture does not apply to " 'a claim that merely restates, under alternative legal

6.

principles, a claim otherwise identical to one that was properly preserved ….' " (*People v. Partida* (2005) 37 Cal.4th 428, 436 (*Partida*).) Defendant raised no objection to the evidence, even one that argued the testimony violated Evidence Code section 352 because the prejudicial impact of the testimony exceeded the probative value. A related type of objection was needed allowing us to consider it now. (*Partida*, at pp. 437–438.)

Defendant cites the case of *People v. Welch* (1993) 5 Cal.4th 228, 237, for the proposition that a legal issue is not forfeited if "an objection would have been futile or wholly unsupported by substantive law then in existence." Defendant contends such an objection would have been futile because our Supreme Court has never issued a ruling on whether evidence of battered woman's syndrome or intimate partner battering syndrome violates due process. In fact, our courts have discussed various evidentiary questions resulting in claims that trials were "fundamentally unfair," violating a defendant's right to due process. (See *Partida*, *supra*, 37 Cal.4th at p. 439.) Recently, the case of *People v. Lapenias* (2021) 67 Cal.App.5th 162, 174, addressed a due process challenge to a similar type of "syndrome" evidence, noting:

> "[R]eviewing courts have routinely held the admission of CSAAS [child sexual abuse accommodation syndrome] evidence does not violate due process. (See, e.g., *People v. Patino* […] 26 Cal.App.4th 1737, 1744-1745 [a trial court's admission of CSAAS evidence did not violate due process]; see also *Amaya v. Frauenheim* (9th Cir. 2020) 823 Fed.Appx. 503, 505 [California court's ruling that the admission of CSAAS evidence did not violate federal due process was not contrary to, or an unreasonable application of, clearly established federal law].)"

While we do not believe a valid due process claim exists with respect to the admission of the testimony offered by Gomez, the right to challenge this testimony was forfeited because no objection was made in the trial court, even one made using an alternative theory.

**B.    Any Potential Error Was Harmless**

Even if the due process claim raised by defendant was preserved, we find any potential error harmless. Defendant argues the applicable standard of review is set out in the case of *Chapman v. California* (1967) 386 U.S. 18, 24, because both his federal and state due process rights have been violated. However, absent a finding there was fundamental unfairness resulting from the admission of the Gomez testimony, any error in admitting this evidence is subject to the state's traditional test, first expressed in the case of *People v. Watson* (1956) 46 Cal.2d 818, 836, asking whether there is a reasonably probability "the verdict would have been more favorable to the defendant absent the error." (*Partida*, *supra*, 37 Cal.4th at p. 439.)

Expert witness testimony in the form of an opinion is limited and must be related to a subject that is beyond common experience and of the type that would assist a trier of fact. (Evid. Code, § 801, subd. (a).) In a criminal case, expert testimony is admissible on the question of "intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence." (Evid. Code, § 1107, subd. (a).) However, this opinion testimony cannot be offered against a criminal defendant "to prove the occurrence of the act or acts of abuse which form the basis of the criminal charge." (Evid. Code, § 1107, subd. (a); see also *People v. Brown* (2004) 33 Cal.4th 892, 908.) Syndrome evidence is often admitted to disabuse jurors of " 'common sense' " misconceptions about how victims of certain types of violence, such as rape victims and abused children, will react when offering testimony. (*People v. Erickson* (1997) 57 Cal.App.4th 1397, 1401.)

The record here demonstrates precautions were taken to ensure the jury considered the evidence in its proper context. First, during Gomez's testimony she was asked if she was aware of the particular facts and circumstances involved in this case. Gomez responded she was not. Gomez also stated she did not know defendant, did not know

8.

K.H., and had not read the police reports connected to the case. She then verified her only purpose in testifying was to provide expert testimony on domestic violence.

Next, before the jury deliberated, the judge specifically provided them with CALCRIM No. 850, as follows:

> "You have heard testimony from Stacy Gomez regarding the effect of Intimate Partner Battering Syndrome and the Cycle of Silence. Stacy Gomez['s] testimony about Intimate Partner Battering Syndrome and the Cycle of Violence is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [K] H.'s conduct was not inconsistent with the conduct of someone who has been abused and in evaluating the believability of her testimony."

Appellant offers no evidence that jurors failed to not comply with this instruction. Without such evidence, the jury is presumed to have understood and followed the instructions provided by the court. (*People v. Brady* (2010) 50 Cal.4th 547, 566, fn. 9.)

Furthermore, a review of the evidence presented in this case shows there was more than adequate evidence supporting the conviction. We must affirm the judgment unless we conclude there is a reasonable probability a result more favorable to the defendant would have been reached in the absence of any error. (*People v. Watson*, *supra*, 46 Cal.2d 818, 836; *People v. Gonzalez* (2018) 5 Cal.5th 186, 195.) Probability in this context, " ' "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.]' " (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.) Under this standard, defendant bears the burden of establishing prejudice, which he did not do here. (*Gonzalez*, at p. 195.) We find no miscarriage of justice and no reason to reverse defendant's conviction related to the Gomez testimony.

## II. The Trial Court Was Not Required to Provide Additional Limiting Instructions

Defendant contends the trial court erred when it failed, sua sponte, to provide one specific instruction on the limited use of the Gomez testimony. A review of the adequacy

of jury instructions is based on whether the trial court "fully and fairly instructed on the applicable law." (*People v. Partlow* (1978) 84 Cal.App.3d 540, 558.) " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole … [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' [Citation.]" (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.)

The instruction at issue here is CALCRIM No. 303, which provides:

"During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

Defendant makes this argument relying on the bench notes for CALCRIM No. 850 which state when giving this particular instruction, the court should also provide a jury with CALCRIM Nos. 303 and 332. CALCRIM No. 332 was in fact provided to the jury in this case. Our review of the record fails to show that CALCRIM No. 303 was ever requested by defendant, and is not among the jury instructions requested but not given to the jury.

Interestingly, the bench notes accompanying CALCRIM No. 303 state:

"The court has no sua sponte duty to give an admonition limiting consideration of evidence; *however, it must be given on request*." (Italics added.)

Case law has in fact held that absent a request, a trial court has no general duty to instruct a jury on the limited purpose for which evidence has been admitted. (*People v. Murtishaw* (2011) 51 Cal.4th 574, 590; see also *People v. Haylock* (1980) 113 Cal.App.3d 146, 150.)

We have considered the instructions given to the jury in this case in their entirety. Based on those instructions, we believe the jury understood its responsibility on how to view the expert testimony on intimate partner battering syndrome and the cycle of

10.

violence. Without a request being made on behalf of defendant, the trial court committed no error when the instruction contained in CALCRIM No. 303 was not given to the jury.

## III. Legislative Changes Require a Remand for Resentencing

Three separate legislative changes that went into effect on January 1, 2022, impact the total sentence imposed on defendant. Defendant is entitled to a reconsideration of his sentence because his appeal was not yet final when these legislative changes went into effect. (*In re Estrada* (1965) 63 Cal.2d 740.) Thus, we vacate the sentence imposed and remand for resentencing.

### A. Senate Bill 567 and Assembly Bill 124

At the time defendant was sentenced, section 1170 provided that the choice between the lower, middle, and upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice." On January 1, 2022, amendments to section 1170 made by Senate Bill 567 went into effect. On that same date, an additional amendment to section 1170 became effective as a result of Assembly Bill 124. Both changes to section 1170 potentially impact the sentence defendant received in this case.

First, the change to section 1170 through Senate Bill 567 makes the middle term the presumptive term. A trial court may now only impose an upper term when circumstances in aggravation exist, and the facts underlying the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by the jury or the court acting as the factfinder. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) The trial judge may, however, rely on certified records of a defendant's prior convictions when considering these enhancements to a sentence without submitting the issue of a prior conviction to a jury. (§ 1170, subd. (b)(3).)

When selecting the upper term of five years for the crime of inflicting corporal injury (§ 273.5, subd. (f)(1)), the trial court stated as follows:

11.

"The Court notes that—that [defendant]'s prior convictions as an adult are numerous and increasing now in seriousness. He has served prior prison terms in both California and in the State of Washington. He was on parole when the offenses here were committed and his prior performance on parole or probation were unsatisfactory. The Court finds no circumstances in mitigation relating to the [d]efendant. The appropriate term, therefore, is [10] years in state prison for a violation of Penal Code Section 273.5(f)(1)."[2]

Again, the plain language of section 1170, subdivision (b)(3) now provides in relevant part:

"Notwithstanding paragraphs (1) and (2), the court may consider the defendant's *prior convictions* in determining sentencing based on a *certified record of conviction* without submitting the prior convictions to a jury." (Italics added.)

There is no mention of performance on probation or parole in this statutory language.

When listing its reasons for choosing the aggravated term, we cannot be certain the court did not consider these factors cumulatively. The court did not state it was exclusively relying on or verifying the fact of prior convictions by consulting a "certified record of conviction." (§ 1170, subd. (b)(3).) While the trial court references prior prison terms as one of the reasons it chose the aggravated term, the court failed to identify which prior prison terms it was referencing.

An additional change made to section 1170 through Assembly Bill 124 requires a trial court to impose the lower term if certain mitigating factors exist. (§ 1170, subd. (b)(6), added by Stats. 2021, ch. 695, § 5.) These potential mitigating circumstances consist of the following:

"(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.

---

**2**     Although it is not specified on the abstract, the base term of five years was doubled to 10 years because defendant had a prior strike under section 667, subdivision (e)(1).

12.

"(B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.

"(C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (§ 1170, subd. (b)(6)(A)–(C).)

These factors were not considered at the time of sentencing. The People concede these factors may have relevance to defendant's resentencing.

Because defendant's sentence must be vacated, the trial court must consider all these changes to section 1170 when imposing a new sentence in this case.

## B. Senate Bill 81

In 2021, the Legislature enacted Senate Bill 81, which amended section 1385, to specify factors the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.) Significantly, these requirements apply to sentences imposed after the effective date of Senate Bill 81. (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; § 1385, subd. (c)(7).) Because resentencing in this case will take place after Senate Bill 81 became effective on January 1, 2022, the trial court must apply the new version of section 1385 and consider whether defendant is eligible to have any relevant enhancements stricken.

## C. Assembly Bill 1869

When defendant was sentenced, the trial court imposed a fee authorized by section 1203.1b. This fee of $296 was for the preparation of a presentence report. Assembly Bill 1869 repealed section 1203.1b, effective July 1, 2021. (Stats. 2020, ch. 92, § 47.) Assembly Bill 1869 also resulted in the enactment of section 1465.9, subdivision (a), which provides "[t]he balance of any court-imposed costs" pursuant to section 1203.1b "shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Stats. 2020, ch. 92, § 62.)

13.

Citing *In re Estrada*, *supra*, 63 Cal.2d 740, defendant contends he should be given the retroactive benefit of these changes. There is no need to apply the presumptive retroactivity of *Estrada* because of the plain language of section 1465.9. The statute specifically states the *balance* of any assessments imposed pursuant to section 1203.1b on June 30, 2021, is now unenforceable and uncollectable as of July 1, 2021. Moreover, "any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (a).)

Section 1465.9 contains no language addressing or concluding defendants are entitled to a refund of any amounts paid before July 1, 2021. We believe the Legislature was fully aware of the impact of the changes given the fact Assembly Bill 1869 was passed during the 2020 calendar year, but the repeal of section 1203.1b and the operative date of section 1465.9 were not scheduled to occur until July 1, 2021. Most legislation passed in one calendar year typically goes into effect on January 1 of the following year. (Cal. Const., art. IV, § 8, subd. (c), par. (1); *People v. Camba* (1996) 50 Cal.App.4th 857, 865.) Given the careful wording of section 1465.9, and the delayed repeal of section 1203.1b, if the Legislature had intended there to be a retroactive impact on fees already collected, we believe that language would have been included in the statute.

The trial court may no longer enforce the fees imposed for the preparation of the presentence report if that remains unpaid. As required by section 1465.9, the enforcement of any unpaid balances for those assessments must be vacated. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 626–627.)

## DISPOSITION

Defendant's sentence is vacated and this case is remanded for resentencing. The trial court must reevaluate the appropriate term to impose for the conviction on count 1, following all legislative changes made to section 1170. The trial court must also consider whether recent legislative changes to section 1385 require the court to strike any eligible enhancements. Finally, the trial court must vacate any unpaid balances for assessments imposed under section 1203.1b. Following resentencing, the trial court shall forward an

14.

amended abstract of judgment to the appropriate authorities.  In all other respects, the judgment is affirmed.