Filed 8/7/13  P. v. Reyes-Acostas CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EDGAR A. REYES-ACOSTAS,<br><br>        Defendant and Appellant. | A135566<br><br>(Solano County<br>Super. Ct. No. FCR289113) |

Edgar A. Reyes-Acostas appeals from a conviction of vehicle theft.  He contends the trial court abused its discretion in admitting evidence of a prior misdemeanor vehicle theft conviction.  We affirm.

**STATEMENT OF THE CASE**

Appellant was charged by an amended information filed on January 23, 2012, with one count of unlawful driving or taking of a vehicle (Pen. Code, § 10851, subd. (a)) and one count of receiving stolen property (Pen. Code, § 496, subd. (a)).  After a jury trial, he was convicted of vehicle theft.  On March 9, he was sentenced to a 16-month jail term.  He filed a timely notice of appeal on May 4, 2012.

**STATEMENT OF FACTS**

On November 18, 2011, Agustin Velazquez drove his 1995 Acura Legend, license plate No. 5XZX823, to the Solano Mall in Fairfield, where he worked at the food court from 9:00 a.m. to 9:30 p.m.  He parked in the first row of the parking lot in front of the sign for the food court, as he regularly did.

1

Around midday, Velazquez loaned his car to his friend Jessica Menjivar, who had borrowed it on several previous occasions. He remembered her saying she went to the doctor or to take her friend to the doctor. Velazquez did not give anyone else permission to drive his car. He gave Menjivar his only key to the car on a key ring; he did not have any spare keys. She returned the car key at about 4:30 or 5:00 p.m. and told Velazquez the car was parked in the same area where he had parked it that morning. At about 9:20 or 9:30 p.m., when he finished work, Velazquez went outside but did not see his car. After looking for 10 to 15 minutes, he called Menjivar, who confirmed where she had parked it. Velazquez continued to look for the car; there were only 20 to 25 cars in the parking lot, and he was sure his was not there. He called the police at around 10:00 p.m., said he believed his car had been stolen, and gave a description of the car.

Menjivar testified that she asked to borrow Velazquez's car to take her friend to Planned Parenthood, but her friend changed her mind, and instead they went outlet shopping and ate. Menjivar did not have her own key to Velazquez's car and when she borrowed the car, he always gave her the same key and did not keep another one. On November 18, she found the car parked in the usual area, used it for about four hours, and returned it to the same area where she had found it at about 3:00 or 3:30 p.m., before starting her 4:00 p.m. shift at work. She was the only person who drove the car during this time, she had the car keys in her purse, and she never left the keys outside her sight. She did not immediately give the keys back to Velazquez when she returned because it was a busy day at work, but took the keys back to him when work slowed down at about 5:00 p.m. During the hour or so while she was working, the car keys were on top of her sweater, which was on top of the safe, under the counter and to the side of the register in the same area where she was working. She did not drive the car again that night or see anyone other than Velazquez drive it, and when she went outside during her break, from about 7:30 to 8:00 p.m., she saw the car where she had parked it. She did not get into an accident while she had Velazquez's car. Menjivar acknowledged on cross-examination

2

that she did not have a driver's license and that she and her friend were cutting school on the day of these events.

At 12:09 a.m. on November 19, 2011, Police Officer Adam Ponce was driving his patrol car westbound on Phoenix Drive, about three or three and a half miles from the Solano Mall. He saw a 1995 Acura, license plate No. 5XZX823, in front of a large apartment complex at 1427 Phoenix Drive. The car was stopped in the eastbound lane of traffic with its brake lights activated, facing the wrong direction and blocking the lane of traffic. Ponce saw the two doors on the passenger side closing. The car moved westbound in the eastbound lane for 20 to 30 yards, followed the road's northward curve while still in the wrong lane, then moved to the middle of both lanes and continued to a stop sign. Ponce activated his emergency lights to make a traffic enforcement stop for driving on the wrong side of the road. The car continued a short distance, turned northbound, then pulled into an apartment complex and stopped.

Ponce approached the driver's side of the car, where appellant was sitting in the driver's seat. Three women were also in the car. As Ponce walked up to the car and advised appellant of the reason for the stop, appellant's hands were on the steering wheel, and his left hand was shaking as though he was nervous. Ponce asked why he was so nervous and whether he had a license. Appellant took his hands off the wheel and held them in front of him, and both hands started shaking. He told the officer that he did not have a license and his entire upper body started shaking. Appellant had a "nervous look on his face." Ponce ran the car's information through police records and learned the car had been stolen. He arrested appellant. The key that was in the car's ignition did not say "Acura" on it.

Officer Ponce, who had investigated at least 100 cases involving stolen vehicles, described various ways that people can start a stolen vehicle: "Usually they can defeat the ignition by punching the ignition; they could break the steering column, access the ignition wires, or hot wiring the car. They can get a key, any key that fits into the

3

ignition that will turn it, it sometimes works." Older cars are easier to manipulate and start than newer cars.

Ponce contacted Velazquez, who came and confirmed the car was his. Velazquez had his car key with him. He told Ponce that he had all the keys for the car and that the key found in the ignition was not his. Velazquez testified that there was damage to the front end of the car, the front bumper was "crashed" and falling off, and the sound system was missing. There had been no damage to the front of the car, and the stereo and speakers had been in it, when Velazquez last drove it. He did not know appellant and had not given him permission to drive the car.

Velazquez told the police his car had been in the parking lot all day; he did not say he had loaned the car to a friend for part of the day. Asked why he had not mentioned lending the car, Velazquez said he was not thinking about this when he talked to the police and they did not specifically ask if he had loaned the car.

**Defense**

Appellant testified that around midnight on November 19, 2011, he was walking on Phoenix Drive from his house to meet his friend Wilbur Chavez. On the way, he met his "old friend" Federico, whom he had met "from prior other times and contact." Federico waved appellant over, asked him if he knew how to drive, and asked him if he could drive some people to their homes. Federico smelled like beer and was holding a beer. He handed appellant the car key and pointed out the car and the people appellant was supposed to drive. Appellant noticed that the car's front headlight was hanging by a string or wire, about to fall off, and that the stereo was missing. He unlocked the car with the key and picked up the people Federico had pointed out, drove for about 30 yards and noticed a patrol car behind him. Appellant stopped the car at a stop sign and the police officer approached the car. Appellant rolled the window down. It was very cold out, and appellant was wearing a "big jacket." He felt "comfortable," but he was "a little" cold when he rolled down the window. The officer asked for appellant's license and appellant, knowing he did not have it with him, "got a little nervous." Appellant did not

4

know that the car Federico had asked him to drive and given him a key for was stolen; he thought it was Federico's car and Federico had given him permission to drive it.

Appellant acknowledged on cross-examination that he did not know Federico's last name, address or phone number, and did not know whether Federico owned a car or was a licensed driver. Asked if he had been convicted of stealing a car in April 2011, appellant testified that he had not, then, when shown the record of his conviction, admitted that his memory had been refreshed and he had been convicted of that offense.

## DISCUSSION

Appellant contends the trial court abused its discretion in admitting evidence of his prior misdemeanor vehicle theft conviction under Evidence Code[1] section 1101, subdivision (b), because the fact of the conviction did not demonstrate the prior offense was sufficiently similar to the charged offense to warrant admission, and it did not have sufficient probative value to outweigh its prejudicial effect. He further urges the court abused its discretion in refusing to sanitize the prior conviction for purposes of impeachment.

Prior to trial, the prosecutor stated his intention to seek to impeach appellant with a 2011 misdemeanor conviction for vehicle theft, as well as to use the conviction as evidence of intent, knowledge that the car was stolen, and lack of mistake, under section 1101, subdivision (b).[2] Defense counsel argued that she had not been given notice of the prosecutor's intent to use the car theft conviction as section 1101, subdivision (b), evidence. The court stated it was tentatively inclined to exclude the evidence because it questioned whether the "mere fact of conviction" was probative of intent, knowledge, or

---

[1] Further statutory references will be to the Evidence Code unless otherwise specified.

[2] The prosecutor initially sought to use a second misdemeanor conviction for petty theft of retail merchandise for these purposes as well. The request concerning the petty theft conviction was subsequently withdrawn because defense counsel represented that she had been given no notice of this conviction before trial and the prosecutor, who had taken over the case less than a week before, had to "take her at her word."

lack of mistake, noting that "[u]sually it's the similarity of the circumstances and not the ultimate result." It deferred ruling until after the prosecution presented its other evidence.

After the prosecution presented its witnesses, it renewed its request to admit the prior conviction under section 1101, subdivision (b). The defense again objected that it had been given no notice of the prosecution's intention to use the vehicle theft conviction in this manner, and argued that the prosecution was trying to use section 1101, subdivision (b), improperly to strengthen a "rather weak" case against appellant, that the court was required to consider the "extraordinary prejudice of letting a jury hear about conduct that is in some vague sense similar to the current allegation," and that permitting this use of the evidence would violate appellant's federal constitutional due process rights.

Considering the three-page certified copy of the record of conviction, the court stated that section 452.5, subdivision (b), read in conjunction with section 1280, "allows the People to prove up prior conduct, whether felony or misdemeanor, via official court records of a conviction." The court noted that uncharged conduct was traditionally presented by proving the underlying facts rather than the "report result," but stated, "[o]ne of the things that a conviction does is it eliminates any uncertainty with regard to the intent with which the uncharged facts were committed." In the present case, the court said, the evidence was such that appellant's intent in driving the car was not "immediately obvious." The court expressly acknowledged its awareness that it had to proceed cautiously and could only admit the evidence if it had "substantial probative value" that was not outweighed by prejudicial effect, but also noted the "longstanding principal [*sic*] that the least degree of similarity between the uncharged act and the charged offense is required in order to prove intent." The court found that the prior conviction was not remote, having occurred less than a year prior to the charged offense, and had "substantial probative value on the issue of prior intent and, therefore, serve[d] as compelling circumstantial evidence of his current intent." The court expressly considered the absence of information about the facts underlying the prior conviction but believed

6

that the fact there was a conviction, and it was so recent, gave it substantial probative value. It also noted that the jury would not worry about punishing appellant for uncharged conduct because he had already been convicted, the proof would not be time consuming, and the absence of underlying facts would reduce the potential for the jury to draw prejudicial inferences from such facts. Accordingly, the court stated its inclination to admit the prior conviction. In response to defense counsel's continued argument emphasizing the absence of information about facts underlying the prior conviction, the court stated that appellant was free to present evidence concerning the circumstances of the prior vehicle theft to demonstrate dissimilarities from the present case. Defense counsel objected that this would improperly shift the burden to appellant and the court disagreed, stating that the conviction demonstrated sufficient similarities in terms of intent for the jury to consider it.

The court was concerned, however, that admitting the certified record of conviction would allow the jury to see information it should not be permitted to see, as the document contained information about dismissed counts and punishment. Ultimately, the court concluded that so much information would have to be redacted that the evidence would be more prejudicial than probative. Accordingly, it denied the motion to admit the document.

Turning to the question of whether appellant could be cross-examined regarding the prior conviction, the court held that it was relevant for section 1101, subdivision (b), purposes and also to impeach, as it was a crime of moral turpitude, and not remote.[3] Defense counsel continued to object to use of the evidence under section 1101, subdivision (b), and asked that the prior be sanitized if used in cross-examination, so the jury would not be told it was for vehicle theft. This request was denied, as the court believed sanitizing would "probably [cause] more problems than non sanitizing": "[T]he fact that it is a [Vehicle Code section ] 10851, would be probative under 1101(b) the

---

[3] As with the section 1101, subdivision (b), issue, the court excluded reference to the petty theft conviction because the defense had not had notice of it before trial.

7

issue of his intent. And by sanitizing it, it has no probative value on that issue and invites the jury to speculate as to what other crime or crimes the defendant may have committed."

As indicated above, on cross-examination, the prosecutor asked appellant if he had been convicted of stealing a car in April 2011, and appellant said "no." Pressed by the prosecutor, he said he did not believe he had been convicted of that crime; the prosecutor asked, "[y]ou were convicted of doing the exact same thing that you're charged with here, right?" and appellant said he could not recall. The prosecutor then showed appellant the record of his conviction and asked if it refreshed appellant's memory, and appellant acknowledged that he now remembered being convicted of stealing a car in April of 2011. The prosecutor confirmed, "And it's true, right? . . . The same crime that you are now charged with?" and appellant said, "Yes."

Appellant confirmed on redirect examination that the conviction was a misdemeanor. The court then advised the jury that the evidence of appellant's prior conviction was admitted for "limited purposes." The court explained, "What it's not being admitted for is proof that this individual seated to my right, the defendant, is disposed to commit crime or has a propensity to commit certain crimes or types of crimes. You're not to use that evidence for these purposes. You can consider it with respect to credibility or as circumstantial evidence of intent, knowledge or lack of consent on the day or days in question that are involved in this case, but not for the purpose of proving propensity to commit crime." The court told the jury there would be a further instruction on this issue in the packet they would be given.

After appellant's testimony, defense counsel moved for a mistrial based on the court's admission of the evidence of appellant's prior conviction, arguing that appellant had been prejudiced and "the bell has been rung and it can't be unrung at this point." Defense counsel characterized the court's ruling as a "hybrid," admitting the evidence for impeachment as well as under section 1101, subdivision (b), and argued that the record of conviction could not be used to prove a misdemeanor for purposes of section 1101,

8

subdivision (b). The court stated its belief that section 452.5 created a hearsay exception for official records of conviction, including misdemeanor convictions.

Denying the motion for mistrial, the court reiterated that the prior offense was a crime of dishonesty with direct bearing on credibility and was not remote, and that misdemeanor conduct and convictions can be used for impeachment. Later, the court added that one of the reasons it ruled as it did was that appellant chose to testify and was not entitled to a "false aura of credibility," "[p]articularly when it's combined with some of the 1101(b) issues that the prior incident was admitted for. They just seemed to intertwine to the Court."

The court instructed the jury that evidence admitted during the trial for a limited purpose could be used for that purpose and no other, and instructed fully on the manner in which the jury could consider the prior conviction. [4]

---

[4] The court instructed pursuant to CALCRIM No. 375:

"The People presented evidence that the defendant committed the offense of misdemeanor unlawful driving or taking of a vehicle that was not charged in this case.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely."

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

"The defendant acted with the intent to deprive the owner of the vehicle of possession or ownership in this case;

"The defendant knew that the vehicle was stolen when he allegedly acted in this case;

"The defendant's alleged actions were the result of mistake or accident;
"OR
"The defendant reasonably and in good faith believed that the owner had consented to his driving of the vehicle.

9

"Evidence Code section 1101, subdivision (a) generally prohibits the admission of a prior criminal act against a criminal defendant 'when offered to prove his or her conduct on a specified occasion.' Subdivision (b) of the statute, however, provides that such evidence is admissible 'when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge . . . ).' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1194.) "The principal factor affecting the probative value of the evidence of defendant's uncharged offenses is the tendency of that evidence to demonstrate the existence of" the fact for which it is being admitted. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).)

In addition, to be admissible, the evidence " ' " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " ' (*People v. Lewis* (2001) 25 Cal.4th 610, 637; accord, *People v. Daniels* [(1991)] 52 Cal.3d 815, 856.) Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (See *Ewoldt, supra*, [7 Cal.4th] at p. 404; Evid. Code, § 352.)" (*People v. Cole, supra,* 33 Cal.4th at pp. 1194-1195.)

"We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." (*People v. Cole, supra,* 33 Cal.4th at p. 1195.) The trial court's decision "will not be

---

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses.

"Do not consider this evidence for any other purpose except for the limited purpose of determining the defendant's credibility.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged in this case. The People must still prove each charge beyond a reasonable doubt."

10

disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Intent was clearly at issue in the present case. Indeed, it was really the only disputed issue: Appellant did not contend he was not driving a stolen vehicle, only that he did not know it was stolen and thought he was driving with the permission of the owner. Other crimes evidence "is admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident." (*People v. Kelley* (1967) 66 Cal.2d 232, 242-243 [sex offenses].) That is precisely the situation here.

We are not persuaded by appellant's argument that the fact of the prior conviction—as opposed to the facts and circumstances underlying it—could not be used to prove intent under section 1101, subdivision (b). As compared with some of the other issues addressed by section 1101, subdivision (b), the "least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. (See *People v. Robbins* [(1988)] 45 Cal.3d 867, 880.) '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' (2 Wigmore [Evidence] (Chadbourn rev. ed. 1979) § 302, p. 241.)" (*Ewoldt, supra,* 7 Cal.4th at p. 402.) "To be admissible to show intent, 'the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance.' (*People v. Yeoman* (2003) 31 Cal.4th 93, 121; accord, [*Ewoldt, supra,*] 7 Cal.4th 380, 402.)" (*People v. Cole, supra,* 33 Cal.4th at p. 1194.)[5]

---

[5] "A greater degree of similarity is required in order to prove the existence of a common design or plan . . . . [¶] To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar

11

The elements of vehicle theft are straightforward: The prosecution must prove that the defendant took or drove someone else's vehicle without the owner's consent, and that when doing so the defendant intended to deprive the owner of possession or ownership of the vehicle for any period of time. (Veh. Code, § 10851 subd. (a); CALCRIM No. 1820.) Appellant's prior conviction of this offense necessarily established that at the time of that offense, he had the requisite intent to deprive the vehicle's owner of possession or ownership. That he held this intent on a prior occasion is probative of the question at issue in the present case—whether he was driving the stolen car with the intent to deprive the vehicle owner of possession or ownership, or lacked that intent and believed he was driving with the permission of the owner. (See *People v. Foster* (1974) 36 Cal.App.3d 594, 597 [prior conviction "conclusive proof" of defendant's prior possession of restricted drugs with intent to sell, relevant to question of intent at time of charged sale which appellant claimed was result of entrapment].)

In arguing that similarity between the prior offense and the charged offense cannot be established without proof of the facts underlying the prior, appellant relies upon *People v. Carter* (1993) 19 Cal.App.4th 1236, 1246 (*Carter*)—specifically, its statement that a court considering whether the similarity between the charged and uncharged offenses is sufficient to warrant admission " ' "must look behind the label describing the

___

spontaneous acts, but the plan thus revealed need not be distinctive or unusual. . . . Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. (See *People v. Ruiz* [(1988)] 44 Cal.3d 589, 605-606.) [¶] The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. (*People v. Miller* [(1990)] 50 Cal.3d 954, 987.) 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' (1 McCormick [on Evidence (4th ed. 1992)] § 190, pp. 801-803.)" (*Ewoldt, supra,* 7 Cal.4th at pp. 402-403.)

kind of similarity or relation between the [uncharged] offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong." ' (*People v. Thompson* [(1980)] 27 Cal.3d [303,] 316, quoting *People v. Schader* (1969) 71 Cal.2d 761, 775.)" (*Carter, supra,* 19 Cal.App.4th at p. 1246.)

The question in *Carter* was whether the defendant killed the victim in a spontaneous act of self-defense or a premeditated robbery and murder, and the challenged evidence tended to prove he had killed a different man shortly before the charged homicide. (*Carter*, *supra*, 19 Cal.App.4th at pp. 1245-1247.) *Carter* upheld the admission of the evidence after examining the facts of the uncharged offense and determining that, like the charged offense, they supported the inference that appellant did not act spontaneously but rather intended to rob and kill the victims.[6] (*Carter, supra*, 19 Cal.App.4th at pp. 1246-1247.)

In *Carter*, there was no conviction establishing the defendant's intent in the uncharged offense, and the probative value of the uncharged offense was only in the inference of intent to be drawn from the specific underlying facts. Here, by contrast, the

---

[6] The *Carter* court explained: "We find the similarity between the killings of Baro and Ericksen substantial enough to support admission of the uncharged offense evidence. Both victims were homosexual men of about the same age. Both met defendant in public places, and then went with him to more secluded locations where they were robbed and killed. The killings were close together in time, and both victims were dispatched with shots to the head at close range by the same gun. In both cases, the victim's cars were ransacked and left in public areas. Both victims were robbed of their credit cards, and other valuables. In both cases, defendant immediately used the cards in variously successful attempts to obtain merchandise, services, and cash. In both cases, the victim was rendered relatively helpless; Baro by bindings, and Ericksen by stripping him of his clothes. We are satisfied that the Baro killing was sufficiently similar to the Ericksen killing to establish a strong inference that defendant intended from the first to use the gun to rob and kill Ericksen, and rebutted the claim that defendant did not intend the killing, but acted only in self-defense." (*Carter*, *supra*, 19 Cal.App.4th at pp. 1246-1247.)

13

prior conviction necessarily established that on a recent prior occasion, appellant drove a stolen car with the intent to deprive the owner of possession or ownership.  That he held this intent on a recent prior occasion supports the inference that his intent was the same this time he was found driving a stolen car, and that the extreme signs of nervousness he displayed when stopped by Officer Ponce were due to his being caught in this act and not, as he claimed, that he did not have his driver's license in his possession.

Appellant emphasizes the potential for prejudice from evidence of prior offenses. " 'Evidence is prejudicial within the meaning of Evidence Code section 352 if it " 'uniquely tends to evoke an emotional bias against a party as an individual' " [citation] or if it would cause the jury to " ' "prejudg[e]' a person or cause on the basis of extraneous factors' " [citation].' (*People v. Cowan* (2010) 50 Cal.4th 401, 475.)  With respect to the risk of undue prejudice, defendant observes that evidence of other crimes is 'inherently prejudicial.' (See *Ewoldt, supra,* 7 Cal.4th at p. 404)  'As Wigmore notes, admission of this evidence produces an "over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts." [Citation.]  It breeds a "tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences . . . ." [Citation.]  Moreover, "the jury might be unable to identify with a defendant of offensive character, and hence tend to disbelieve the evidence in his favor." [Citation.]' (*People v. Thompson*[*,*[*supra,*] Cal.3d [at p.] 317, fn. omitted.)  Due to these inherent risks, 'uncharged offenses are admissible only if they have *substantial* probative value.' (*Id.* at p. 318, original italics; see *Ewoldt, supra,* at p. 404.)" (*People v. Foster* (2010) 50 Cal.4th 1301, 1331.)  Appellant particularly stresses the danger posed by a prior conviction for the same offense as that charged, leading jurors to believe that " 'if he did it before he probably did so this time.' " (*People v. Beagle* (1972) 6 Cal.3d 441, 453.)

Such risks of prejudice are undeniable.  But unlike prior convictions used for impeachment—where the probative value of the prior offense does not depend on its similarity to the charged offense but on its tendency to undermine the veracity of the

14

defendant—other crimes evidence is admitted under section 1101 precisely when its similarity to the charged offense is relevant to prove a disputed issue. In this context, it is the similarity of the prior offense that gives the evidence its probative value. " ' "[T]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*.' " (*People v. Karis* (1988) 46 Cal.3d 612, 638; see *Vorse* [*v. Sarasy* (1997)] 53 Cal.App.4th [998,] 1009.)" (*People v. Escudero* (2010) 183 Cal.App.4th 302, 312.)" (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)

Here, the prior offense had substantial probative value. As the trial court pointed out, the fact that appellant had been convicted lessened the risk of prejudice, as there would be no temptation for the jury to punish appellant for the prior offense. In the opposite situation, *Ewoldt* pointed out that the prejudicial effect of other crimes "is heightened by the circumstance that defendant's uncharged acts did not result in criminal convictions. This circumstance increased the danger that the jury might have been inclined to punish defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses, and increased the likelihood of 'confusing the issues' (Evid. Code, § 352), because the jury had to determine whether the uncharged offenses had occurred." (*Ewoldt*, *supra*, 7 Cal.4th at p. 405.)

The trial court's determinations that the prior conviction was sufficiently similar to the charged offense, and that its probative value was not "substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" (*People v. Cole, supra,* 33 Cal.4th at p. 1195), was not "arbitrary, capricious, or patently absurd." (*People v. Rodriguez, supra,* 20 Cal.4th at p. 9.) There was no abuse of discretion.

15

In light of this conclusion, we need not address appellant's additional arguments that the trial court abused its discretion in refusing to sanitize the conviction for impeachment purposes and that admission of this evidence violated appellant's due process right to a fair trial in that it did not support any permissible inference.

**DISPOSITION**

The judgment is affirmed.


_____
Kline, P.J.


We concur:


_____
Haerle, J.


_____
Richman, J.