Filed 10/16/13  P. v. Dorado CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B244255 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA119388) |
| v. | |
| JOSE MANUEL DORADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dewey L. Falcon, Judge.  Affirmed in part, reversed in part and remanded.

Law Offices of Fred Browne & Associates and Fred Browne for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Tasha G. Timbadia, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Jose Manuel Dorado of three counts each of attempted murder (Pen. Code, §§ 664, 187, subd. (a) [counts 1, 2, and 4]),[1] assault with a firearm (§ 245, subd. (a)(2) [counts 5, 6, and 8]), and assault with a semiautomatic firearm (§245, subd. (b) [counts 9, 10, and 12]) for shooting at Eduardo Herrera, Hector Magana, and Oscar Amaya. As to counts 1, 2, and 4, the jury found true allegations that defendant personally and intentionally discharged a firearm, proximately causing great bodily injury. (§ 12022.53, subd. (d).) As to counts 5, 6, 8, 9, 10, and 12, the jury found true allegations that defendant personally inflicted great bodily injury. (§ 12022.7, subd. (a).) As to counts 9, 10, and 12, the jury found true allegations that defendant personally used a firearm. (§12022.5, subd. (a).) The trial court sentenced defendant to a term of 59 years 4 months to life.

In his timely appeal, defendant contends (1) his convictions for assault with a firearm in counts 5, 6, and 8 must be reversed because they are lesser included offenses of assault with a semiautomatic firearm, (2) the trial court imposed an unauthorized indeterminate sentence on count 1 because the jury did not find the attempted murder was committed willfully, deliberately, and with premeditation, (3) the enhancements as to counts 4, 8, and 12 must be reversed because there was insufficient evidence Amaya suffered great bodily injury, and (4) the attempted murder convictions must be reversed because the court erroneously instructed the jury regarding the "kill zone" concept.

The Attorney General concedes (1) the convictions for assault with a firearm are lesser included offenses of assault with a semiautomatic firearm and must be reversed, and (2) the court imposed an unauthorized sentence on count 1. The Attorney General also contends, and defendant agrees, the trial court imposed an unauthorized 25-year-to-life enhancement on the assault with a semiautomatic firearm convictions in counts 9, 10, and 12 pursuant to section 12022.53, subdivision (d), because the information did not include the required allegations.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

We reverse the convictions on counts 5, 6, and 8, and remand for resentencing on counts 1, 9, 10, and 12. We affirm the judgment in all other respects.

## FACTS[2]

Defendant was at the El Rodeo nightclub in Pico Rivera around 2:00 a.m. on December 19, 2010. After a fight took place in the club, security guards intending to escort defendant pushed, grabbed, and struggled with defendant until he was outside the back door to the club. Defendant and security guard Amaya struck each other one or two times in the club parking lot. Defendant went to his truck, obtained a gun, and returned to the back door of the club. Herrera, Magana, and David Adame, all security guards, were near the back door. Defendant fired six or seven shots in quick succession, hitting Herrera in the foot and Magana in the left leg.

Defendant ran back to his truck. Amaya and another guard threw their flashlights at defendant's truck, causing the passenger side window to break. Amaya was trying to open the driver's side door when defendant pulled out a gun. Amaya retreated and saw defendant fire a gun towards him at least six times.[3] Amaya tried to chase defendant's truck as it was leaving the parking lot, but defendant escaped. After defendant left, Amaya noticed a bullet had grazed his wrist. He also had been shot in the right shin. When he lifted up his pant leg, a bullet fell out. Herrera, Magana, and Amaya went to the hospital by ambulance.

Seven shell casings were recovered by sheriff's deputies from the area near the club's back door. Bullet fragments were recovered on the stairs leading to that door. The casings and bullet fragments, as well as bullets extracted from Herrera's foot and Magana's leg, were linked to a .45-caliber Ruger found in defendant's Ford Explorer during a traffic stop on March 28, 2011.

---

[2] We state the facts in the light most favorable to the judgment.

[3] Although fewer casings were recovered, witnesses testified defendant fired six or seven times at the rear door, and six more times at Amaya.

3

# DISCUSSION

## 1. <u>Lesser Included Offenses</u>

Defendant contends his convictions for assault with a firearm in counts 5, 6, and 8 must be reversed because they are lesser included offenses of his convictions for assault with a semiautomatic firearm in counts 9, 10, and 12.[4] The Attorney General concedes defendant is correct, and we agree.

A greater offense necessarily includes a lesser offense if the defendant cannot commit the former without also committing the latter. (*People v. Jennings* (2010) 50 Cal.4th 616, 667-668.) "A semiautomatic firearm assault cannot be committed without also committing a firearm assault." (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199 [reversing firearm assault convictions as lesser included offenses].) The convictions in counts 5, 6, and 8 must be reversed. (*Ibid.*)

## 2. <u>Unauthorized Sentences</u>

### a. *Jury Findings Do Not Support an Indeterminate Sentence on Count One*

Defendant correctly points out the trial court erroneously sentenced him to a term of "seven years to life" on count one without a jury finding the attempted murder was willful, deliberate, and premeditated. The Attorney General concedes the court erred.

A defendant convicted of attempted murder is subject to a *determinate* sentence of five, seven, or nine years unless "it is pleaded and proved that the murder attempted was willful, deliberate, and premeditated." (*People v. Arias* (2010) 182 Cal.App.4th 1009,

---

[4] Defendant's opening brief mistakenly identifies the convictions for assault with a semiautomatic firearm as counts 3, 10, and 12, rather than 9, 10, and 12. The Attorney General suggests that defendant is apparently referring to count 9 instead of count 3 in connection with the assault with a semiautomatic firearm conviction regarding victim Eduardo Herrera. We proceed with the analysis as to counts 9, 10, and 12.

1011, fn. 2; § 664, subd. (a).) A sentence is unauthorized if "it could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Without a "willful, deliberate, and premeditated" finding by the jury, the court only has discretion to sentence defendant to a determinate term of five, seven, or nine years. (*People v. Seel* (2004) 34 Cal.4th 535, 541; § 664, subd. (a).)

The information alleged defendant committed the attempted murders "willfully, deliberately, and with premeditation," and the trial court instructed the jury to determine whether the allegation was true if they convicted defendant of attempted murder. However, the verdict forms inadvertently omitted such a finding. The court only learned of the omission after the jury was discharged but before sentencing, and the court correctly concluded there was no remedy for the oversight.

The prosecution's sentencing memorandum sought only determinate sentences for counts 1, 2, and 4, and the trial court imposed determinate sentences for counts 2 and 4 but imposed an indeterminate sentence of "seven years to life" on count 1. Both the minute order and the abstract of judgment reflect a determinate seven-year sentence on count one. The indeterminate sentence is unauthorized.

When the trial court's oral pronouncement results in an unauthorized sentence, the error may be corrected at any time. (*People v. Smith* (2001) 24 Cal.4th 849, 854.) We remand so the trial court may correct its oral pronouncement of judgment. Because both the minute order and abstract of judgment already reflect a seven-year determinate term, those documents need not be corrected.

**b.** *The Information Lacked Allegations to Support Enhancements Under Section 12022.53 for Counts 9, 10, and 12*

The Attorney General contends, and defendant agrees, the trial court imposed an unauthorized enhancement of 25 years to life under section 12022.53, subdivision (d), on the assault with a semiautomatic firearm charges in counts 9, 10, and 12.[5]

Counts 9, 10, and 12 did not include allegations under section 12022.53, subdivision (d). Because the section 12022.53, subdivision (d) enhancement was not alleged as to these counts, nor found true by the jury, the corresponding sentences on counts 9, 10, and 12 were unauthorized. We remand to the trial court for resentencing. (See *People v. Irvin* (1991) 230 Cal.App.3d 180, 192-193 ["As a result of the trial court's imposition of an unauthorized sentence, the appropriate course of action is to remand this case to the trial court"].)

## 3. Great Bodily Injury

Defendant contends the enhancement allegations for discharge of a firearm proximately causing great bodily injury in count 4, and personal infliction of great bodily injury in counts 4, 8, and 12 were not supported by the evidence because Amaya's bullet wounds were neither "significant" nor "substantial."[6]

Whether a victim suffered great bodily injury is a question of fact for the jury to decide. (*People v. Cross* (2008) 45 Cal.4th 58, 64.) We review the jury's factual finding of great bodily injury under the substantial evidence standard. (*People v. Escobar* (1992)

---

[5] The trial court stayed the enhancements as to counts 9 and 10, and ordered the enhancement for count 12 to run concurrent with the enhanced sentence on counts 1 and 2. The abstract of judgment incorrectly references count 11 instead of count 10 and incorrectly shows the enhancement on count 12 as stayed. Because the section 12022.53, subdivision (d) enhancements are unauthorized for all three counts, they will be removed from the abstract of judgment upon resentencing.

[6] The trial court properly stayed the section 12022.7, subdivision (a) enhancement found true as to count 4 pursuant to section 12022.53, subdivision (f).

3 Cal.4th 740, 759 (*Escobar*).) "'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' [Citations.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

"Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony" is subject to a three-year sentence enhancement under section 12022.7, subdivision (a). Great bodily injury is defined as "a significant or substantial physical injury." (*Id.*, subd. (f).) Section 12022.53, subdivision (d) requires a prison term of 25 years to life additional and consecutive to any other term for any person who "in the commission of a [specified] felony . . . personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 . . . ."

Great bodily injury need only be a substantial injury beyond that inherent in the offense itself. (*Escobar*, *supra*, 3 Cal.4th at pp. 746-747.) Indeed, the victim need not suffer permanent or even prolonged impairment of a bodily function, but "minor, trivial or moderate injuries do not constitute great bodily injury." (CALJIC No. 17.19.5.) In *People v. Martinez* (1985) 171 Cal.App.3d 727, 735-736, the court found insufficient evidence of great bodily injury where a defendant wielded a knife and "picked or cut" the victim through two shirts and a heavy coat. Even the prosecutor conceded the victim's injury was "almost like a pinprick on the knife wound" and requested to strike the great bodily injury allegation. (*Ibid.*) In contrast, evidence that a bullet caused a "mere soft tissue injury" can be sufficient to support a finding of great bodily injury. (*People v. Le*

7

(2006) 137 Cal.App.4th 54, 58 [bullet traveled through left thigh and lodged in right thigh, victim released from hospital within 24 hours after bullet was removed, but had ongoing pain and difficulty walking].) "'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. . . .' [Citations.]" (*Escobar, supra*, at p. 752.)

Defendant's shots hit Amaya in the leg and on the wrist. Amaya described his wrist injury as feeling "hot," and when he looked at his wrist, he had "blood all over [his] hand." He knew his leg was injured and when he rolled up his pant leg, he saw the injury and a bullet fell out. The prosecution entered into evidence photos showing Amaya's injuries. The wounds shown in the photos are oozing blood and Amaya's wrist wound extends across almost half of his wrist. Amaya was taken to the hospital, although there was no testimony or medical records documenting the nature of his wounds or required treatment.

Viewing the evidence in the light most favorable to the judgment, a reasonable trier of fact would conclude that Amaya's injuries were substantial and significant. Evidence showing that Amaya was shot twice and taken to the hospital is substantial evidence to support a finding of great bodily injury.

## 4. Kill Zone Instruction

Defendant contends the trial court erroneously instructed the jury on the theory of a "kill zone." Defendant argues the kill zone instruction provided a legally erroneous theory of liability and the record does not demonstrate the jury convicted defendant for attempted murder on a legally correct theory. We disagree.

The Attorney General argues defendant forfeited his challenge to the kill zone instruction by failing to object or request any change to the language of the instruction at trial. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012 [a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court].) The rule of forfeiture does not apply if the

instruction was an incorrect statement of the law (*id.* at p. 1012), or if the instructional error affected the defendant's substantial rights. (Pen. Code, § 1259; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.) If the kill zone instruction was given in error, it arguably affected defendant's substantial rights. "Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)

We review a claim of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) We examine the instructions to determine whether the trial court "'fully and fairly instructed on the applicable law . . . .'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111 (*Martin*), quoting *People v. Partlow* (1978) 84 Cal.App.3d 540, 558.) "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*Martin, supra,* at p. 1112, quoting *People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

The trial court instructed the jury on the elements of attempted murder (CALJIC No. 8.66) and the kill zone (CALJIC No. 8.66.1). The court did not err in giving the kill zone instruction because the facts of this case are appropriate for the instruction and the evidence was sufficient to support the jury's conviction regardless of whether the jury relied on a kill zone theory of liability.

In determining whether an attempted murder conviction should be sustained, the trial court must analyze defendant's intent as to each alleged victim and evaluate whether defendant intended to kill that person rather than another. (*People v. Bland* (2002) 28 Cal.4th 313, 330-331 (*Bland*).) However, the intent requirement for attempted murder does not preclude a scenario where defendant intends to kill a person, but not any specific individual. "[A] person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind." (*People v. Stone* (2009) 46 Cal.4th 131, 140.) When a defendant fires a "flurry of bullets" at a fleeing car with multiple occupants, the

9

facts support a specific intent to kill the driver, as well as a reasonable inference of concurrent intent to kill the passengers. (*Bland*, *supra*, at p. 328.)

The facts of this case overwhelmingly support a jury finding that defendant intended to kill Herrera and Magana, regardless of whether the jury used the theory of a kill zone to find intent or not. Defendant saw three security guards near the back door of the club and after a brief verbal exchange, he fired between four and seven shots at them in quick succession, from about five or ten feet away. Regardless of which of the three guards was defendant's primary target, the kill zone instruction merely clarified that the jury could find a concurrent intent to kill others who were in the line of fire. Although the instruction allows the jury to find defendant had a primary target, with a concurrent intent to kill anyone near that target, it does not require a conviction to rest on a theory of concurrent intent. (See *Bland*, *supra*, at p. 331, fn. 6 [the theory of concurrent intent "is not a legal doctrine requiring special jury instructions, as is the doctrine of transferred intent"].) Nothing in the instruction precluded the jury from finding defendant had a specific intent to kill any one of the guards at the back door and fired multiple shots to carry out that intent.

# DISPOSITION

The convictions for assault with a firearm in counts 5, 6, and 8 are reversed. The cause is remanded for resentencing on (1) the attempted murder charge in count 1, and (2) the assault with a semiautomatic firearm charges in counts 9, 10, and 12 to remove the unauthorized 25-year-to-life enhancements imposed pursuant to section 12022.53, subdivision (d). In all other respects, the judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.

KUMAR, J.*

---

\* Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.